LLOYD W. SMITH, PROSECUTOR, v. THE BOROUGH OF FLORHAM PARK ET AL., RESPONDENTS.

Argued March 3, 1925—Decided April 8, 1925.

Municipalities—Ordinances—Water Supply—Provisions for Laying Mains, &c., Under Home Rule Act, Article 20, Section 1, Extends Only to Cases Where Supply Already Exists Owned By Municipality, Not to the Installation of a Distributing System To Be Attached To an Outside System—Improvement Proposed a General Not a Local One.

On *certiorari*.

Before Justices KALISCH, BLACK and CAMPBELL.

For the prosecutor, *King & Vogt.*

For the respondents, *Robert E. Burke* and *J. H. Thayer Martin.*

PER CURIAM.

This writ brings up for review an ordinance of the borough of Florham Park, entitled "An ordinance providing for the creation of a board known as 'the Florham Park Water Improvement Board,' and defining the powers and duties, and providing for the installation as a borough improvement water mains and service connection, and hydrants in certain streets or public highways in the borough of Florham Park, and providing for the assessment of the cost of such improvement upon the property benefited thereby."

Several reasons are advanced against the validity of the ordinance—*first,* there is no private or public water supply of the borough, nor has it taken any steps to secure a supply of water for the mains after their installation; *second,* no opportunity has been afforded to the voters of the borough to require a submission to the voters of a proposition authorizing the borough to supply water.

These may be considered together.

The contention of the prosecutor is that the only authority for such an improvement as is contemplated is under article 32 of the Home Rule act (*Pamph. L.* 1917, *ch.* 152, *p.* 429), providing for the securing of a supply of water by the borough, in one of four different ways, upon the approval of a majority of the legal voters at an election called for that purpose.

Respondents rely for authority upon subdivision i of section 1, article 20 (Home Rule act), as amended (*Pamph. L.* 1924, *ch.* 206, *p.* 433), reading as follows:

Section 1. "A local improvement is one, the cost of which, or any portion thereof, may be assessed upon lands in the vicinity thereof benefited thereby."

Every municipality may undertake any of the following works as a local improvement:

(i) *"The installation of service connections to a system of water, gas, light, heat or power works, owned by the municipality or otherwise, including all such works as may be necessary for supplying water, gas, light, heat or power to lands for whose benefit such services are provided;* service connections, including the laying, constructing or placing of mains, conduits or cables in, under or along a street, road, avenue, alley or other public highway or portion thereof   *   *   *."

This paragraph, as contained in the original act (*Pamph. L.* 1917, *ch.* 152, *p.* 371), consisted of the italicized words in the foregoing quotation.

The borough has made no provision for securing a supply of water for public and private uses.

Its purpose is that the borough of Madison, as adjoining municipality, having a municipal water supply, will supply the mains to be constructed under the ordinance in question with water, making its own contracts with the consumers in the borough of Florham Park.

The mains proposed to be laid will have a length of fifteen thousand five hundred (15,500) feet, or slightly less than twenty per cent. of the total mileage of the streets of the borough. From the stipulation of facts it also appears that

the borough has by an ordnance adopted June 16th, 1924, provided for mains to be constructed along Brooklake road to connect with mains of the borough of Chatham, now extending to a point about one thousand (1,000) feet from the line of the borough of Florham Park.

We think subdivision 1, article 20 of the Home Rule act above quoted does not apply to such an improvement, but does apply only to the making of service connections to a system of pipes and mains already existing in the borough either owned by the borough or a body, public or private, other than the borough, and that the additional language in the 1924 amendment, "service connections including the laying, constructing or placing of mains, conduits or cables in, under or along a street, road, avenue, alley or other public highway or portion thereof," has application only to an existing system of mains in the borough, but where the obtaining of water service requires a further construction than from the mains in a street to the properties immediately adjacent thereto.

It is conceded that the ordinance is not based upon, nor were the proceedings taken and conducted under, the provisions of article 32 of the Home Rule act, *supra,* and the ordinance is therefore without statutory support, and must therefore be set aside.

It may be pertinent here to call attention to a letter from the mayor of the borough of Madison to the mayor of Florham Park under date of February 13th, 1925, and being an exhibit in this case, from which it appears that the borough of Madison is unwilling, or, at least, extremely reluctant, to enter into any contract or agreement to furnish water to the residents of Florham Park who are proposed to be served by the construction of the mains in question.

This seems to us to add weight to our conclusion that the provisions of article 20, section 1, subdivision 1, Home Rule act, *supra,* apply only when there is in the streets of the municipality a system of water mains then actually supplying water service. It would be most unreasonable to suppose that such mains could be constructed without any means in existence for a water supply to and through them. *Third.*

The work proposed is a general improvement to be paid for by general taxation, and not a local improvement to be assessed upon the lands in the vicinity thereof benefited thereby.

In view of our findings under reasons one and two this is so.

In this connection two other objections are urged—(1) because the title of the ordinance would indicate it to be both a general improvement and a local improvement.

But "the title of an ordinance being inessential, cannot control the tenor of the enactment." *Hershoff* v. *Beverly,* 45 *N. J. L.* 288; *Loertscher* v. *Jersey City,* 84 *Id.* 537 (at *p.* 538.)

(2) Because paragraph 3 of the ordinance provides the "cost of such improvement shall be assessed upon the property benefited thereby," and, therefore, the entire cost must be so assessed irrespective of resulting benefits.

But this is not so. The statute regulates the method of assessment. All that the ordinance proposes and undertakes to do is to make known and declare that assessments are to be made as for a local improvement. *Fourth.* The borough has no authority to provide by ordinance for the creation of "the Florham Park Water Improvement Board," and give such board the right to assess for benefits.

We are inclined to concede to the borough the right to appoint such a board to act in a supervisory and recommendatory capacity. We think such power exists in article 14, section 1, subdivision C of *Pamph. L.* 1917, *p.* 352. It will be noted that section 2 of the ordinance provides "there shall be constructed and installed, under the supervision of said board and of the borough council," the water mains in question, "together with necessary service connections," and, further, but "nothing herein contained shall be construed to permit any contract to be made or entered into or executed by said board without the approval, consent and instruction by resolution or otherwise of the borough council. All contracts to be made and executed by the mayor and council of the borough of Florham Park except as herein otherwise provided."

We think this language clothes such board with no greater powers than those that would be possessed by an inspector,

engineer or other agent or employe acting in an administrative, consulting or recommendatory capacity. If this was the entire power attempted to be given this board we would, therefore, hold that the mayor and council were within their rights under the provisions of the statute above referred to. But the ordinance provides further in section 3, as follows: "The cost of such local improvement shall be assessed by the aforesaid board upon the lands in the vicinity thereof benefited thereby * * *." For this there is no authority.

The only authority is to be found in *Pamph. L.* 1917, *ch.* 152 (at *p.* 377), article 20, section 17, as follows:

"The governing body of every municipality in which no board is provided by law for the making of all assessments for benefits accruing from local improvements, may, by ordinance, create a general board for that purpose, which board shall thereafter make all such assessments."

Section 18 of article 20 of the same act provides:

"In any municipality where no such board is provided for by law or by such ordinance, the governing body may, by resolution, upon the completion of any local improvement, appoint three discreet freeholders who shall be residents of the municipality and in no way interested in such improvement, in which instance the freeholders so appointed shall make the assessment for such particular improvement."

Section 16 of article 20 of the act provides:

"All assessments for benefits for local improvements under this act shall be made by the officer or board charged with the duty of making general assessments of taxes in the municipality, except where there is now provided by law a board for the making of all such assessments, in which case all assessments shall be made by such board as provided."

Respondents admit this lack of authority complained of, but urge that this provision may be exscinded from the ordinance, and the balance remain as a legal municipal enactment.

We are by no means certain, however, that this is so unimportant and inconsequential a part of the whole that it may be eliminated and the balance stand as the expression of a completed legislative act of the borough council. But upon

this it is not necessary for us to definitely pass, because of our findings upon other reasons. *Fifth.* The ordinance was considered by the council before the hearing was held thereon.

It was introduced June 16th, 1924, and passed upon its first and second reading, and ordered published and notice of final adoption on July 7th ordered given.

On June 30th an adjourned meeting was held, and council rescinded its action of June 16th in passing the ordinance on first and second reading.

Changes in the form of advertisement made by the borough clerk and borough attorney were ratified and confirmed.

But these changes extended further than the notice. They went to amendments and changes in the language of the ordinance itself. Section 2 of the ordinance, as set out in the notice of June 16th, read: "* * * at a total cost of, approximately, $29,000, and which said sum is hereby appropriated for the purpose of such improvement * * *." This was amended by adding "or so much thereof as may be necessary," so that as amended it would read: "* * * at a total cost of, approximately, $29,000, and which said sum, or so much thereof as may be necessary, is hereby appropriated for the purpose of such improvement."

In the same section 2 the word "hereinafter" was changed to "herein otherwise," so that it now reads: "All contracts to be made and executed by the mayor and council of the borough of Florham Park, except as herein otherwise provided."

This is in direct violation of *Haake* v. *Norwood Borough,* 2 *N. J. Adv. R.* 1046, and, therefore, nullifies and makes illegal the proceedings upon the passage and adoption of the ordinance.

The final reason is that the borough council, under the ordinance, appointed a commission to assess lands before the ordinance was published, as required by law.

This we need not pass upon, for the reason that the ordinance and proceedings brought up must be set aside for the reasons already given.

The ordinance and proceedings under review are set aside, with costs.